IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHIS, LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL HOLDING COMPANY INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 5:14-CV-277 (MTT)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Defendants Liberty Mutual Group, Inc. ("LMGI") and Liberty Mutual Insurance Co. ("LMIC") have moved to dismiss the claims against them for failure to state a claim (Doc. 15) and Defendant Liberty Mutual Holding Company Inc. ("LMHC") has moved to dismiss the claims against it for lack of personal jurisdiction or, alternatively, for failure to state a claim (Doc. 16). For the following reasons, the motions are **GRANTED**.

### I. BACKGROUND

Plaintiff CHIS, LLC seeks relief on behalf of itself and others similarly situated for the Defendants' alleged refusal to assess and pay damages for diminution in value when claims are made under their business or commercial property insurance policies. CHIS alleges it "timely reported a claim for direct physical loss to its building resulting from water damage" but that, in violation of Georgia law and in breach of their insurance policy with CHIS, the Defendants failed to assess and pay damages for diminution in

the value of CHIS's property.  (Doc. 36, ¶ 2).[1]  CHIS has asserted a claim for breach of contract and a claim for declaratory relief.

CHIS's insurance policy was issued by Defendant Peerless Indemnity Insurance Company,[2] but CHIS seeks to hold Defendants LMGI, LMIC, and LMHC liable based on an alter ego, agency, and/or joint venture theory.  LMGI and LMIC have moved to dismiss for failure to state a claim upon which relief can be granted, contending the complaint does not sufficiently allege a basis for holding them liable, and LMHC has moved to dismiss for lack of personal jurisdiction.  CHIS asserts this Court has personal jurisdiction over LMHC for the same reasons it contends liability is proper: based on an alter ego, agency, and/or joint venture theory.

The allegations pertaining to alter ego, agency, and joint venture are as follows:

11. LMHC operates primarily through four business units: (1) Commercial Insurance; (2) Personal Insurance; (3) Global Specialty; and (4) Liberty International. These business units utilize various trade names and trademarks, such as "Liberty Mutual Insurance" and "Peerless Insurance." Each of these business units market and underwrite insurance policies issued by the numerous insurance entities owned or controlled by LMHC. LMHC, its various business units, and the various insurance entities it owns and/or operates are hereinafter sometimes referred to collectively as "Liberty Mutual."

---

[1] The Defendants filed their motions to dismiss prior to CHIS's filing its second amended complaint to correctly plead CHIS's citizenship in response to an order of the Court.  (Docs. 34; 36).  The Parties have stipulated that the pending motions to dismiss (Docs. 15; 16) are applicable to the second amended complaint.

[2] Defendant Peerless filed a separate motion to dismiss CHIS's request for a declaratory judgment (Count 2), which the Court denied.  (Docs. 13; 35).

12. LMGI is a subsidiary of LMHC.

13. LMIC is a member company and subsidiary of LMHC.

14. LMHC is the ultimate parent company of Peerless.

15. Peerless is controlled by LMHC.

16. Peerless is a subsidiary or affiliated insurer of LMGI.

17. Peerless is controlled by LMGI.

18. Peerless markets and underwrites insurance policies issued by certain LMGI stock insurance companies and affiliated insurers, including LMIC.

19. Peerless is controlled by LMIC.[3]

20. Upon information and belief, at all relevant times herein, each Defendant acted in all aspects as agent, apparent agent, and alter ego for each other Defendant and as agent, apparent agent, and alter ego of their ultimate parent company, LMHC.

21. Upon information and belief, at all relevant times herein, each Defendant was engaged in a joint venture with each other Defendant.

22. Defendants share and have in common several officers and directors.

23. Defendants have a common administrative or principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02166.

24. Defendants coordinate and commingle financial and other resources by making financial transactions between each other, by filing consolidated federal income tax returns, by issuing consolidated financial statements, and by other means. The consolidated financial statements issued by Defendant

---

[3] In its response brief, CHIS cites paragraphs ¶¶ 12-19 as alleging "LMHC completely owns LMGI, LMGI completely owns LMIC, and LMIC completely owns Peerless." (Doc. 24 at 2). However, that is not what the complaint alleges.

> Liberty Mutual Holding Company, Inc. include affiliated entities over which it exercises control, including LMIC and LMGI.
>
> 25. Defendants all operate and trade under the common name of Liberty Mutual and use the same logo to identify and promote their business. The cover page of the Policy and the Premium Notice issued to Plaintiff displays the Liberty Mutual logo and name.
>
> 26. Through the Premium Notice, Plaintiff was instructed to make payments due under the Policy to "Liberty Mutual Insurance." Plaintiff therefore made payments due under the Policy payable to "Liberty Mutual Insurance."
>
> 27. Defendants' actions are sufficient to find that there is an amalgamation of each of the Defendants.

(Doc. 36, ¶¶ 11-27).

## II. DISCUSSION

### A. LMGI and LMIC's Motion

#### 1. Legal Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002).  The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Twombly,* 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

### 2. Alter Ego

CHIS contends LMGI and LMIC are liable for Peerless's alleged breach of contract on an alter ego theory.  "Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another."  *Kissun v. Humana, Inc.*, 267 Ga. 419, 419-20, 479 S.E.2d 751, 752 (1997).  "[G]reat caution should be exercised by the court," however.  *Amason v. Whitehead*, 186 Ga. App. 320, 321, 367 S.E.2d 107, 108 (1988).

> In order to disregard the corporate entity because a corporation is a mere alter ego or business conduit of a person, it should have been used as a subterfuge so that to observe it would work an injustice. To prevail based upon this theory it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist.  The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility.

*Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289-90, 612 S.E.2d 296, 299 (2005) (citation omitted).  Thus, Georgia courts disregard the corporate form if: (1) the corporation is a "mere instrumentality" of the parent company or the shareholders, and (2) to observe the corporate form would "work an injustice."  *See Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1328 (N.D. Ga. 2014); *Fla. Shade Tobacco Growers, Inc. v. Duncan*, 150 Ga. App. 34, 34, 256 S.E.2d 644, 644 (1979).

Because it is an equitable doctrine, piercing the corporate veil to hold a parent company or shareholder liable "is appropriate[ ] … only in the absence of adequate remedies at law."  *Baillie Lumber Co.*, 279 Ga. at 290, 612 S.E.2d at 299.  Thus, the Georgia Supreme Court has held it is required, "as a precondition to a plaintiff's piercing the corporate veil and holding individual shareholders liable on a corporate claim, that there be insolvency on the part of the corporation in the sense that there are insufficient corporate assets to satisfy the plaintiff's claim."  *Johnson v. Lipton*, 254 Ga. 326, 327, 328 S.E.2d 533, 535 (1985).  Following that holding, federal courts applying Georgia law have concluded a corporate defendant must be insolvent or have insufficient assets to satisfy the plaintiff's claim before the plaintiff can pierce the corporate veil to hold a parent company or shareholder liable.  *See B & F Sys., Inc. v. LeBlanc*, 2011 WL 4103576, at *34 (M.D. Ga.); *Friedman's, Inc. v. Morgan Schiff & Co. (In re Friedman's)*, 385 B.R. 381, 414-15 (S.D. Ga.), *vacated in part by* 396 B.R. 623 (S.D. Ga. 2008); *Adams v. Unum Life Ins. Co. of Am.*, 508 F. Supp. 2d 1302, 1315 (N.D. Ga. 2007); *Perry v. Unum Life Ins. Co. of Am.*, 353 F. Supp. 2d 1237, 1240 (N.D. Ga. 2005).

LMGI and LMIC contend the allegations of their control over Peerless are conclusory, and thus, CHIS cannot meet the first prong of the alter ego test.  Though

CHIS does allege in conclusory fashion that LMGI and LMIC exert control over Peerless, it has alleged additional supporting facts.  For example, it has alleged that the Defendants issue consolidated financial statements; file consolidated federal income tax returns; have in common several officers and directors; share a common office; operate and trade under the common name of "Liberty Mutual" and use the same logo to identify and promote their business; and that Peerless markets and underwrites insurance policies for LMIC and other LMGI affiliated insurers.  The Court cannot say CHIS's allegations are insufficient to show Peerless is a "mere instrumentality" of LMGI and LMIC.  *Cf. Najran Co. for Gen. Contracting & Trading v. Fleetwood Enters., Inc.*, 659 F. Supp. 1081, 1096-97 (S.D. Ga. 1986) (describing factors the court considered in deciding whether plaintiff met burden to show corporate veil should be pierced as to parent corporation).[4]

LMGI and LMIC further argue CHIS has failed to allege Peerless is insolvent or that the Defendants' corporate structure will allow Peerless to evade its contractual responsibilities.  Thus, they contend the allegations are insufficient to satisfy the second prong of the alter ego test.  CHIS argues that "the class-action nature of this case indicates, taking all reasonable inferences in favor of Plaintiff, that Peerless may not be able to satisfy an eventual judgment against it."  (Doc. 24 at 6).  There is no allegation Peerless is insolvent, which, as discussed above, is a requirement under Georgia law.  Even assuming the inability to satisfy an eventual class-action judgment would be sufficient, there is also no such allegation in the complaint.

---

[4] The Defendants distinguish *Najran* because the court considered many other factors, not alleged in the present case, in deciding whether subsidiaries' corporate veils should be pierced to hold the parent company liable.  While this is true, the court was deciding whether to grant summary judgment to *the plaintiff* on its claim of alter ego (rather than deciding whether the plaintiff's allegations of alter ego were sufficient to survive a motion to dismiss).  *Najran*, 659 F. Supp. at 1096.

The only allegation in the complaint CHIS cites in support of the second prong of the alter ego analysis is that CHIS was required to make its payments under the policy to "Liberty Mutual Insurance." (Doc. 36, ¶ 26). Thus, CHIS contends the Liberty Mutual Defendants benefitted from Peerless's contract with CHIS and should share in the alleged liability. However, the allegation that CHIS made its payments to "Liberty Mutual Insurance" does not plausibly suggest that adhering to the corporate form would somehow "defeat justice, perpetuate fraud or [allow Peerless] to evade contractual or tort responsibility."

*Najran*, cited by CHIS in support, is distinguishable. In that case, the Southern District of Georgia found the second prong of the alter ego test satisfied based on a parent corporation's profiting from "substantial favorable publicity" following the consummation of a contract between two of the parent company's subsidiaries and the plaintiff. 659 F. Supp. at 1097. Specifically, the court pointed to several articles "mak[ing] glowing reference" to the parent corporation with no mention of the subsidiaries with whom the plaintiff actually contracted. *Id.* The court also noted that the corporate veil was "diaphanous (if not transparent)" and that it was "truly offensive" for the parent company "to accept the general applause of the business community directed toward [its] prowess in 'landing' this contract" but to subsequently "disclaim[ ] … interest in the transaction." *Id.* at 1097-98. Pretermitting whether this is sufficient in light of the Georgia Supreme Court's holding that insolvency is a "precondition" to piercing the corporate veil,[5] CHIS has not alleged facts comparable to those in *Najran* suggesting an equitable reason to pierce the corporate veil and hold LMGI and LMIC liable.

---

[5] The court in *Najran* did not address this case.

It may be that as CHIS investigates its claims against Peerless, CHIS can allege facts to support its alter ego theory. But the allegations CHIS now makes are insufficient.

### 3. Actual or Apparent Agency

The existence of a parent/subsidiary relationship does not in and of itself establish an agency relationship under Georgia law. *Matson v. Noble Inv. Grp., LLC*, 288 Ga. App. 650, 659, 655 S.E.2d 275, 282 (2007). "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1.

> To prove actual agency, the purported principal must have assumed the right to control the method, manner, and time of the purported agent's work, as distinguished from the right merely to require certain definite results in conformity to the contract. The right to control the purported agent's time means the right to control the hours of work. The right to control the method and manner of work means the right to tell the purported agent how to perform all details of the job, including the tools he should use and the procedures he should follow.

*Satisfaction & Serv. Hous., Inc. v. SouthTrust Bank, Inc.*, 283 Ga. App. 711, 713, 642 S.E.2d 364, 365 (2007) (internal quotation marks and footnotes omitted).

Though CHIS alleges Peerless markets and underwrites insurance policies issued by LMIC and LMGI, it alleges no facts regarding the level of control LMIC and LMGI exert over Peerless in this regard. CHIS does allege Peerless was "controlled by" both LMGI and LMIC but does not elaborate on the nature of this "control." (Doc. 36, ¶¶ 17, 19). There are also no allegations about any express agency agreement or other facts to suggest Peerless was LMIC's and/or LMGI's agent, beyond a conclusory allegation that "at all relevant times herein, each Defendant acted in all aspects as agent, apparent agent, and alter ego for each other Defendant and as agent, apparent

agent, and alter ego of their ultimate parent company, LMHC." (Doc. 36, ¶ 20). Therefore, the Court concludes CHIS has not sufficiently alleged an actual agency relationship between Peerless and either LMGI or LMIC.

CHIS also asserts a theory of apparent agency in its complaint.

> In order to recover under a theory of apparent or ostensible agency, a plaintiff must establish three elements: (1) that the alleged principal held out another as its agent; (2) that the plaintiff justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation; and (3) that this justifiable reliance led to the injury.

*Bright v. Sandstone Hospitality, LLC*, 327 Ga. App. 157, 158, 755 S.E.2d 899, 902 (2014) (citation omitted).

CHIS contends it has sufficiently alleged these elements because Peerless uses the "Liberty Mutual" logo, Peerless markets and underwrites policies issued by LMIC and LMGI, and CHIS was directed to make its payments to "Liberty Mutual Insurance." However, as the Defendants point out, there are no allegations that *LMIC and/or LMGI* made any representations to CHIS and thus no allegations that they held Peerless out as their agent. *See Kids R Kids Int'l, Inc, v. Cope*, 330 Ga. App. 891, 895, 769 S.E.2d 616, 619 (2015) ("To establish the required elements of apparent agency, it is not enough that the plaintiff *believe* that an agency relationship exists.  Neither is it sufficient that the *agent* represent his status as agent.  It must be established that the *principal* held out the agent as its agent." (internal quotation marks and footnote omitted)).  There are three Defendants in this case with "Liberty Mutual" as part of their name, and CHIS alleges only that it was instructed through the "Premium Notice" to make its payments to "Liberty Mutual Insurance." (Doc. 36, ¶ 26).  There is no mention of which Defendant purportedly sent this notice to CHIS.  CHIS alleges only that the Premium Notice, as

well as its insurance policy, "displays the Liberty Mutual logo and name." (Doc. 36, ¶ 25). However, the Georgia Court of Appeals has held that mere use of logos/trademarks is insufficient to show apparent agency. *See Kids R Kids Int'l, Inc.*, 330 Ga. App at 895, 769 S.E.2d at 619. The fact that Peerless markets and underwrites policies for LMIC and LMGI likewise does not show that either LMIC or LMGI held Peerless out as its agent.

Finally, even if these allegations were sufficient to show LMIC and/or LMGI held Peerless out as its agent, they do not plausibly suggest CHIS "justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation." Though CHIS argues in its response that it entered into a contract with Peerless based on "these representations,"[6] there is no such allegation in the complaint. (Doc. 24 at 8).

### 4. Joint Venture

Lastly, CHIS seeks to hold LMIC and LMGI liable on the theory that they were part of a joint venture with Peerless.

> The theory of joint venturers arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other.

*Kissun*, 267 Ga. at 420, 479 S.E.2d at 752. CHIS has not alleged each party exercises mutual control over any joint undertaking but has instead specifically alleged LMIC and LMGI exercise control over Peerless. (Doc. 36, ¶¶ 17, 19). No other allegations in the complaint suggest mutual control. *See Williams v. Chick-fil-A, Inc.*, 274 Ga. App. 169, 170, 617 S.E.2d 153, 155 (2005) ("The right to exercise mutual control is a crucial part of a joint venture.").

---

[6] The Court is unsure what representations CHIS is referring to.

### B. LMHC's Motion

#### 1. Legal Standard

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (internal quotation marks and citation omitted). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (internal quotation marks and citation omitted). "'Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.'" *Id.* (citation omitted).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.* at 1257-58 (internal quotation marks and citation omitted). This two-step inquiry is necessary because the long-arm statute does not provide jurisdiction to federal courts in Georgia that is coextensive with procedural due process.[7] *Id.* at 1259. Rather, the statute "imposes

---

[7] The Court acknowledges the apparent tension between *Diamond Crystal* and Georgia courts' interpretation of the Georgia long-arm statute following *Innovative Clinical & Consulting Services., LLC v. First National Bank of Ames*, 279 Ga. 672, 620 S.E.2d 352 (2005). According to *Diamond Crystal*, *Innovative Clinical* holds that O.C.G.A. § 9-10-91(1) is not coextensive with due process limitations and must be analyzed independently therefrom. Yet state courts do not appear to read *Innovative Clinical* the same way. *See, e.g.*, *Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 137, 661 S.E.2d 185, 188 (2008) (citing *Innovative Clinical* for the proposition that "the language of O.C.G.A. § 9-10-91(1) must be construed as reaching 'to the maximum extent permitted by procedural due process'"). Moreover, prior to *Diamond Crystal* at least one federal district court read *Innovative Clinical* to extend § 9-10-91(1) to the limits of the

independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Id.* In short, jurisdiction that might appear to be conferred by statute may be negated by due process concerns, and vice versa. *See id.* at 1261.

### 2. Analysis

LMHC contends this Court lacks personal jurisdiction over it because (1) LMHC did not transact business or own real property in Georgia so as to subject it to jurisdiction under Georgia's long-arm statute; (2) jurisdiction over LMHC would violate the Due Process Clause of the Fourteenth Amendment; and (3) personal jurisdiction cannot be imputed to LMHC. In support of its motion, LMHC submitted the declaration of James R. Pugh, an Assistant Secretary of LMHC, who explains LMHC's lack of contacts with the state of Georgia and further states LMHC "does not offer insurance products or insurance services to the public, nor does it enter into any agency contracts pursuant to which third parties or agents offer insurance products or insurance services on behalf of [LMHC]." (Doc. 16-2, ¶ 3).

In response, CHIS argues jurisdiction over LMHC is appropriate based on an alter ego, agency, and/or joint venture theory. CHIS makes it clear that it is not asserting LMHC itself has any contacts that would subject it to personal jurisdiction in Georgia.[8]

---

Due Process Clause. *See, e.g.*, *Global Payments Direct, Inc. v. Am. Bank of Commerce*, 2006 WL 269967, at *2 n.2 (N.D. Ga.).

[8] CHIS does not go through the two-part analysis in arguing personal jurisdiction over LMHC is proper. Rather, it assumes that if LMHC is the alter ego of, principal of, or joint venturer with Peerless under Georgia law, personal jurisdiction exists over LMHC.

### a. Alter Ego

A nonresident parent corporation may be subject to personal jurisdiction on an alter ego theory based on the Court's personal jurisdiction over a subsidiary. *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002); *RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1301-02 (N.D. Ga. 2013); *Vogt v. Greenmarine Holding, LLC*, 2002 WL 534542, at *4-*7 (N.D. Ga.). Because this case is premised on diversity jurisdiction, the Court looks to Georgia law to determine whether the exercise of personal jurisdiction on an alter ego theory is appropriate. *See Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (looking to Ohio law in diversity case to see if alter ego theory of personal jurisdiction was appropriate); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1270-74 (11th Cir. 2002) (looking to Florida law in diversity case to determine whether personal jurisdiction over parent based on subsidiary's contacts was appropriate).

As discussed above, CHIS has failed to allege sufficient facts to meet the second prong of the alter ego test and show a basis for disregarding the corporate form of Peerless to hold LMGI and LMIC liable on an alter ego theory under Georgia law. For the same reasons, CHIS has failed to allege sufficient facts to justify disregarding Peerless's corporate form to hold LMHC liable for Peerless's alleged breach of contract. *See Yukon Partners, Inc. v. Lodge Keeper Grp., Inc.*, 258 Ga. App. 1, 6, 572 S.E.2d 647, 652 (2002) (plaintiff must show incorporation of the subsidiary "was a sham or that it was used to defeat a public convenience, to justify wrong, protect fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard of the corporate entities" to impute contacts for personal jurisdiction on an alter ego theory

(internal quotation marks and citation omitted)).  Therefore, CHIS has failed to allege a prima facie case of jurisdiction on an alter ego theory.

Though, as discussed below, the Court declines to defer ruling on the motion to allow CHIS to engage in jurisdictional discovery, the Court recognizes that as CHIS investigates its claims against Peerless, CHIS may be able to allege facts to support its alter ego theory of personal jurisdiction.

### b. Actual or Apparent Agency

CHIS has failed to allege a prima facie case of personal jurisdiction as to LMHC based on a theory of actual or apparent agency for the same reasons it has failed to state a claim based on actual or apparent agency against LMGI and LMIC.  There are no additional allegations in the complaint pertaining specifically to LMHC that would suggest Peerless was its agent.  *Cf. Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 660-61 (11th Cir. 2015) (holding plaintiff failed to establish agency relationship under Georgia law and thus failed to establish personal jurisdiction under Georgia long-arm statute).

### c. Joint Venture

CHIS has also failed to allege a prima facie case of jurisdiction based on a theory of joint venture as to LMHC for the same reasons, discussed above, that it has failed to allege a theory of joint venture as to LMGI and LMIC.  There are no allegations of a joint undertaking or mutual control with respect to any of LMHC's subsidiaries.  Further, under Georgia law it appears that the existence of a joint venture in and of itself is not sufficient to impute jurisdictional contacts.  *Cf. Catholic Stewardship Consultants, Inc. v.*

*Ruotolo Assocs., Inc.*, 270 Ga App. 751, 756-7, 756 n.1, 608 S.E.2d ,1, 4-5, 4 n.1 (2004).

### 3. Jurisdictional Discovery

In its response brief, CHIS requests that, should the Court deem its jurisdictional allegations insufficient, it be allowed to conduct jurisdictional discovery. However, the Court declines to allow jurisdictional discovery because CHIS has failed to allege a prima facie case of personal jurisdiction over LMHC. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946-47 (7th Cir. 2000); *McCarthy v. Yamaha Motor Mfg. Corp.*, 994 F. Supp. 2d 1318, 1328 (N.D. Ga. 2014) ("The McCarthys' failure to establish a prima facie case for personal jurisdiction and to provide examples of discovery requests they would propound means that they have essentially asked for a jurisdictional fishing expedition, and the Court is not required to allow such an expedition."); *Melech v. Life Ins. Co. of N. Am.*, 2011 WL 1047716, at *7 (S.D. Ala.) ("Plaintiff fails to offer proof that the CIGNA Defendants exercised an unusually high degree of control over its subsidiary, or that the subsidiary acted merely as an agent. Rather, Plaintiff merely hopes to prove CIGNA Defendants' control with discovery."); *cf. Butler v. Sukhoi Co.*, 579 F.3d 1307, 1313-14 (11th Cir. 2009) (holding district court abused its discretion in allowing subject matter jurisdictional discovery when plaintiff failed to allege prima facie case for subject matter jurisdiction pursuant to an exception to the Foreign Sovereign Immunities Act in complaint).[9]

---

[9] In *Majd-Pour v. Georgiana Community Hospital, Inc.*, cited by CHIS in support of its request for jurisdictional discovery, the Eleventh Circuit held it was an abuse of discretion for the district court to dismiss the case for lack of subject matter jurisdiction without allowing for jurisdictional discovery and noted the plaintiff's attorney "protested that with discovery he could show the existence of jurisdiction." 724 F.2d 901, 903 (11th Cir. 1984). The district court dismissed the case based on the plaintiff's failure to sufficiently establish subject matter jurisdiction at a hearing on a motion for a temporary restraining order ("TRO"). *Id.* at 902-03. The Eleventh Circuit held that, while this correctly resulted in the denial of the

## III. CONCLUSION

For the foregoing reasons, LMIC and LMGI's motion to dismiss (Doc. 15) is **GRANTED**, and LMHC's motion to dismiss (Doc. 16) is **GRANTED**. The dismissals are without prejudice. The Court declines to allow jurisdictional discovery.

**SO ORDERED,** this 13th day of July, 2015.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT

---

TRO, the dismissal of the entire case was premature. Notably, the Eleventh Circuit clarified that the district court's dismissal was *not* based on any potential deficiencies in the allegations of the complaint but, rather, only on the plaintiff's failure to prove jurisdictional facts at the TRO hearing. *Id.* at 903 n.1.